UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

THOMAS MACCALLUM,
    Plaintiff,

    v.

NEW YORK YANKEES PARTNERSHIP,
    Defendant.

CIVIL ACTION NO.
3:04cv1479 (SRU)

**RULING ON DEFENDANT'S MOTION TO DISMISS**

The plaintiff, Thomas MacCallum, brought this action seeking damages for injuries

arising out of a slip-and-fall incident at Yankee Stadium, the Bronx, New York.  The defendant,

New York Yankees Partnership ("NYYP"), filed a motion to dismiss for improper venue, or in

the alternative, to transfer venue to the United States District Court for the Southern District of

New York.  For the reasons set out below, NYYP's motion is denied.

**I.**    **Facts**

On the basis of the complaint, affidavits, and other supporting materials filed by each

party in support of their positions on this motion, the following appear to be the facts of the case.

MacCallum is life-long Yankee fan and a resident of Connecticut.  NYYP is an Ohio

limited partnership registered to do business in the State of Ohio, with its principal place of

business in the Bronx, New York, where it owns and operates the "New York Yankees" Major

League Baseball Club.  NYYP's four partners are: (1) George Steinbrenner, III, an individual and

resident of Florida; (2) Martinique Holdings, Inc., a Florida corporation; (3) Marsh Harbor

Holdings, Inc., a Florida Corporation; and (4) Yankee Global Enterprises, LLC, a Delaware

limited liability company.

In December 2002, MacCallum telephoned the Yankee ticket office and purchased eight

tickets for the Yankees' opening day game, which were subsequently mailed to his home in Connecticut.  In the past fifteen years, MacCallum has arranged many bus trips to Yankee games for his local Elks Club in New Haven, Connecticut.  As a frequent purchaser of Yankee tickets, MacCallum is on a mailing list and email list informing him of Yankee ticket specials and discounts.  Additionally, MacCallum alleges that NYYP actively solicits its fan base from Connecticut residents, advertises extensively in the state, and derives substantial revenue from Connecticut residents.

On April 8, 2003, MacCallum traveled to Yankee Stadium in the Bronx to attend the opening day game.  During the third inning, while walking along an interior, downward-sloping ramp inside the stadium, MacCallum encountered a slick and slippery surface that caused him to fall.  As a result of his fall, MacCallum suffered a series of injuries to his right foot and ankle. MacCallum alleges that his injuries are the proximate result of NYYP's negligence and seeks to recover his medical expenses and other actual and consequential damages.

## II.     Discussion

NYYP has moved pursuant to FED. R. CIV. P. 12(b)(3) to dismiss the complaint for improper venue, or in the alternative, to transfer the case to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1406(a).  NYYP argues that venue in this court is not proper under 28 U.S.C. § 1391(a) because NYYP does not "reside" in Connecticut and a substantial part of the events or omissions giving rise to this claim did not occur in Connecticut.[1]  Mr. MacCallum counters that venue is proper because section 1391(c)

---

[1] Section 1391(a) reads in relevant part: "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a

provides that a corporate defendant "shall be deemed to reside in any judicial district in which it

is subject to personal jurisdiction at the time the action is commenced."  MacCallum argues that,

because NYYP has sufficient contacts with the State of Connecticut to permit the exercise of

personal jurisdiction, venue is proper in this district.

A.     Venue

When faced with a Rule 12(b)(3) motion to dismiss for improper venue, a plaintiff has

the burden of showing that venue in the forum district is proper.  *Indymac Mortgage Holdings,*

*Inc. v. Reyad*, 167 F. Supp. 2d 222, 237 (D. Conn. 2001) (citing *United States Envtl. Prot.*

*Agency v. Port Auth. of New York & New Jersey*, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001)).

The court must take all allegations in the complaint as true, unless contradicted by the

defendant's affidavits, and when an allegation is so challenged a court may examine facts outside

the complaint to determine whether venue is proper.  *Id.* (internal citations and quotations

omitted).  The court must draw all reasonable inferences and resolve all factual conflicts in favor

of the plaintiff.  *Id.* (internal citations and quotations omitted).

The complaint alleges diversity jurisdiction under 28 U.S.C. § 1332, therefore the

applicable venue statute is 28 U.S.C. § 1391(a).  NYYP's correctly asserts that venue in this

court would be improper pursuant to section 1391(a)(2) because it is undisputed that a substantial

part of the events giving rise to MacCallum's claim occurred at Yankee Stadium in the Bronx,

New York.  However, for reasons explained below, venue is proper pursuant to section

1391(a)(1).

---

judicial district in which a substantial part of the events or omissions giving rise to the claim
occurred, or a substantial part of property that is the subject of the action is situated . . . ."

Section 1391(c) treats corporate defendants as residents of the forum district so long as the defendant is subject to personal jurisdiction in that district. *Divicino v. Polaris Industries*, 129 F. Supp. 2d 425, 435 (D. Conn. 2001). Therefore, if the defendant is a corporation and is subject to personal jurisdiction in the forum district, then it will be deemed to "reside" in the district, making venue proper under section 1391(a)(1). *Id.*

MacCallum asserts that, for purposes of venue determinations, the definition of "corporation" under section 1391(c) should be construed to include unincorporated business entities such as partnerships. NYYP counters that, by its plain language, the statute applies only where the defendant is a corporation and, because NYYP is a limited partnership, section 1391(c) is inapplicable here. NYYP further asserts that, because its principal place of business is in the Bronx, New York and none of its partners reside in Connecticut, venue here is improper under section 1391(a)(1).

The determinative issue is whether the definition of "corporation" under section 1391(c) should be construed more expansively to include partnerships such as NYYP. I conclude that, consistent with the trend in the Second Circuit and elsewhere, unincorporated business entities such as partnerships should be treated like corporations when applying section 1391(c).

The issue was first addressed by the United States Supreme Court in *Denver & Rio Grande Western Railroad Co. v. Brotherhood of Railroad Trainmen*, 386 U.S. 556 (1967). The Court extended section 1391(c) to include labor unions, holding that "it most nearly approximates the intent of Congress to recognize the reality of the multi-state, unincorporated association such as a labor union and to permit suit against that entity, like the analogous

-4-

corporate entity, wherever it is 'doing business.'"[2]  *Id.* at 562.  Shortly thereafter, the United

States Court of Appeals for the Fifth Circuit concluded that the *Brotherhood of Railroad*

*Trainmen* holding should be broadly construed to include partnerships, because for venue

purposes there is no recognizable difference between the unincorporated partnership and

unincorporated association.  *Penrod Drilling Co. v. Johnson*, 414 F.2d 1217, 1220 (5th Cir.

1969).  As the court reasoned, to read "corporation" rigidly so as to exclude all unincorporated

business entities, aside from labor unions, would be "illogical," subjecting litigants bringing suit

against those other entities to "unfair, discriminatory burdens."  *Id.* at 1222.

Since the *Penrod Drilling* decision, there has been a growing tendency in other courts to

treat partnerships like corporations for purposes of venue.  *Injection Research Specialists v.*

*Polaris Indust.*, 759 F. Supp. 1511, 1513 (D. Colo. 1991).  Citing the decisions in *Brotherhood of*

*Railroad Trainmen* and *Penrod Drilling*, the court held that "it is evident that the propriety of

venue in suits involving defendant partnerships must be assessed under corporate venue

standards."  *Id.* at 1514.  In the Second Circuit, though apparently no court has directly ruled on

the issue of partnerships and section 1391(c), several decisions have addressed other types of

unincorporated associations.  Concluding that a foreign trust should be considered a

"corporation" for purposes of Section 1391(c), the Southern District of New York noted that

Section 1391(c)'s "reference to 'corporations' has been liberally construed to include trust funds

---

[2] Section 1391(c) was amended in 1988 so that a corporate defendant would be "deemed
to reside in any judicial district in which it is subject to personal jurisdiction" rather than any
judicial district "in which it is incorporated or licensed to do business or is doing business."  That
change has not impacted the expanded reading of "corporation" under section 1391(c) as
evidenced by the number of cases decided since 1988 that have broadly construed "corporation"
for purposes of venue determinations.  *See Carolina Archery Prod., Inc. v. Alpine Archery Inc.*,
No. 1:03 CV 00176, 2004 WL 1368863, at *7, n.2 (M.D.N.C. June 15, 2004) (citing cases).

and other entities such as voluntary associations and partnerships." *Kingsepp v. Wesleyan Univ.*, 763 F. Supp. 22, 28 (S.D.N.Y. 1991).  Although section 1391(c) expressly applies only to corporations, courts in this circuit have recognized that, since the Supreme Court's decision in *Brotherhood of Railroad Trainmen*, "the definition of corporate residence has broadened substantially," *Hsin Ten Enter. USA, Inc. v. Clark Enter.*, 138 F. Supp. 2d 449, 458 (S.D.N.Y. 2000), to include partnerships.  *Id.* (citing *Penrod Drilling Co. v. Johnson*, 414 F.2d 1217 (5th Cir. 1969)).

Following this precedent, I conclude that section 1391(c) should be construed to include partnerships, at least under the circumstances of this case, where three of the partnership's four partners are corporate entities themselves.  Applying the corporate residence standards of section 1391(c) to NYYP, venue will be proper pursuant to section 1391(a)(1) so long as this court has personal jurisdiction over NYYP.   Therefore, I will proceed to examine whether there is personal jurisdiction over NYYP.

B.    Personal Jurisdiction

Though it has not directly challenged the issue of personal jurisdiction through a Rule 12(b)(2) motion, NYYP argues that, should section 1391(c) be applicable in this case, MacCallum has not met his burden of proof that NYYP has sufficient minimum contacts with Connecticut for personal jurisdiction to be asserted.

Ordinarily, when faced with a motion challenging personal jurisdiction, the plaintiff bears the burden of proving the court may exercise personal jurisdiction over the defendant. *Amerbelle Corp. v. Hommel*, 272 F. Supp. 2d 189, 192 (D. Conn. 2003).  Where no discovery has been conducted and no evidentiary hearing has been held, a plaintiff facing such a motion "need only

allege facts constituting a prima facie showing of personal jurisdiction." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997).  Additionally, at this stage in the proceedings, I will construe all pleadings and affidavits in the light most favorable to the plaintiff.  *Id.*

Questions of personal jurisdiction over a foreign partnership in diversity cases are resolved through the use of a two-part analysis.  First, the court must examine whether the State's long-arm statute authorizes the exercise of jurisdiction over the defendant.  *Amerbelle Corp.*, 272 F. Supp. 2d at 193.  Second, the court must determine whether the exercise of such jurisdiction comports with requirements of constitutional due process.  *Id.*

1.      *Connecticut Long-Arm Statute*

In diversity cases, personal jurisdiction is determined by the law of the state in which the court sits.  *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963).  In this case, the relevant Connecticut long-arm statute governing jurisdiction over foreign partnerships is Conn. Gen. Stat. § 52-59b.[3]

Section 52-59b(a)(1) is satisfied here.  When viewed in the light most favorable to him, MacCallum's complaint, affidavit, and other supporting materials make a prima facie showing that NYYP transacts business within the State sufficient to establish jurisdiction under Connecticut's long-arm statute.  MacCallum alleges that NYYP advertises in the state and solicits ticket sales from Connecticut residents through mailings and emails about Yankee ticket specials

---

[3] Conn. Gen. Stat. § 52-59b reads in relevant part: "(a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association who in person or through an agent: (1) transacts any business within the state . . . ."

and discounts.  Allegations that the defendant had placed ads in a newspaper sold in Connecticut

has been held sufficient to make a prima facie showing of jurisdiction under Connecticut's

long-arm statute.  *Miller v. Meadowlands Car Imports, Inc.*, 822 F. Supp. 61, 65 (D. Conn.

1993).

NYYP argues that MacCallum's allegations are not specific enough to meet his burden of

proof.  The cases cited by NYYP in support of its contention that a plaintiff must allege more

specific jurisdictional facts are factually distinguishable from this case.  In both *Pitruzello v.

Muro*, 798 A.2d 469 (Conn. App. 2002), and *Olson v. Accessory Controls & Equipment Corp.*,

735 A.2d 881 (Conn. App. 1999), the defendant submitted counter-affidavits directly denying the

jurisdictional facts alleged by the plaintiff in his complaint.  In *Olson*, because the defendant had

submitted competing affidavits, the trial court's determination that the plaintiff would not be able

to rely solely on the conclusory allegations in his complaint to establish jurisdiction was

affirmed.  *Id.* at 885.   Similarly, in *Pitruzello*, the defendant submitted affidavits denying the

jurisdictional allegations contained in the plaintiff's complaint.  *Pitruzello*, 798 A.2d at 473.  The

court held that the plaintiff's subsequent response to those counter-affidavits did not provide

sufficient factual evidence of the defendant's solicitation of business in Connecticut to prove the

court had personal jurisdiction.  *Id.* at 473-74.

That is not the case here.  MacCallum has alleged jurisdictional facts that, if true, would

be enough to satisfy the requirements for asserting personal jurisdiction under Connecticut's

long-arm statute.  Specifically, MacCallum alleges that NYYP solicits ticket sales from

Connecticut residents and advertises in media outlets available in Connecticut.  NYYP has

submitted no affidavits specifically denying those facts or asserting any facts to the contrary.  In

-8-

the absence of any counter-affidavits, MacCallum's affidavits and supporting material are

sufficient to make a prima facie showing that the exercise of personal jurisdiction over NYYP

under Connecticut's long-arm statute is permissible.  Thus, MacCallum has satisfied the first part

of the two-part jurisdictional analysis.

> 2.      *Constitutional Due Process*

Under the second part of the personal jurisdiction analysis, it is necessary to determine

whether the exercise of personal jurisdiction over NYYP comports with the requirements of due

process.  There must be sufficient minimum contacts between the defendant and the forum state

so that an assertion of personal jurisdiction does not offend "traditional notions of fair play and

substantial justice."  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Personal

jurisdiction may be exercised where "the defendant's conduct and connection with the forum

state are such that he should reasonably anticipate being haled into court there."  *World-Wide*

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Thus, where a non-resident defendant

"purposefully directs" his activities toward forum residents, personal jurisdiction is legitimate.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1984).

In determining whether the assertion of personal jurisdiction over NYYP comports with

due process, it is necessary to determine whether any of its alleged activities were purposely

directed toward Connecticut residents.  Significantly, advertising campaigns directed at

Connecticut residents have been found sufficient to confer specific jurisdiction over non-resident

defendants.  Where a Connecticut resident was injured while visiting the Walt Disney World

resort in Florida, the court held exercising personal jurisdiction over the Walt Disney World

Company did not violate due process because the company had engaged in a national advertising

campaign aimed, in part, at attracting Connecticut residents to visit the resort. *Mallon v. Walt Disney World Co.*, 42 F. Supp. 2d 143, 145 (D. Conn. 1998). Based on that advertising campaign, the court held the defendant had "purposely directed" its activities at residents of Connecticut and therefore was subject to specific jurisdiction because the litigation "resulted from alleged injuries that arise out of or relate to those activities." *Id.* By "deliberately reach[ing] out to attract Connecticut residents to their resort," the defendant "could reasonably expect to be haled into court here in connection with claims for personal injuries sustained by Connecticut residents while visiting the resort." *Id.* Similarly, in a personal injury suit where the plaintiff alleged the defendant, a Vermont ski resort, had engaged in a print and media advertising campaign aimed at soliciting the business of Connecticut residents, the court held the plaintiff had made a prima facie showing that the "defendant's conduct and connection with the forum State are such that the defendant should reasonably have anticipated being haled into court there." *O'Brien v. Okemo Mountain, Inc.*, 17 F. Supp. 2d 98, 102 (D. Conn. 1998). Therefore, the exercise of personal jurisdiction over the non-resident defendant did not violate due process. *Id. See also Divicino v. Polaris Industries*, 129 F. Supp. 2d 425, 434 (D. Conn. 2001) (holding that the minimum contacts requirement was satisfied by advertisements directed toward a limited geographic area that included Connecticut).

NYYP argues MacCallum unilaterally made a decision to purchase a ticket and travel to Yankee Stadium, which is insufficient to support the exercise of personal jurisdiction in this court. As alleged by MacCallum, however, NYYP places ads in media outlets available to Connecticut residents and sends promotional materials directly to Connecticut residents in order to entice Connecticut residents to come to the Bronx to attend Yankee games. Those alleged

activities are sufficient to establish that NYYP has the requisite minimum contacts with Connecticut.  By deliberately reaching out to attract Connecticut residents to attend baseball games at Yankee Stadium, NYYP could reasonably expect to be haled into court here in connection with claims for personal injuries sustained by Connecticut residents while visiting Yankee Stadium on game day.  Therefore, MacCallum has met his burden of making a prima facie showing that personal jurisdiction over NYYP comports with the requirements of due process.

Where the plaintiff has met his burden of demonstrating that minimum contacts exist between the defendant and the forum state, in order to defeat the assertion of personal jurisdiction, the defendant must present a "compelling case" that there are other considerations rendering jurisdiction unreasonable.  *Milne v. Catuogno Court Reporting Services, Inc.*, 239 F. Supp. 2d 195, 205 (D. Conn. 2002) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 395 F.3d 120, 129 (2d Cir. 2002)).  NYYP has not sought to do so.  Therefore, the exercise of personal jurisdiction by this court comports with the requirements of due process.

III.    **Conclusion**

MacCallum has met his burden of making a prima facie showing that NYYP's activities bring it within the jurisdictional reach of Connecticut's long-arm statute, and that the exercise of personal jurisdiction is consistent with constitutional due process.  In the face of a prima facie showing that personal jurisdiction exists, under section 1391(c) NYYP is deemed to "reside" in Connecticut, thus making venue in this court proper pursuant to section 1391(a)(1). Accordingly, NYYP's motion to dismiss for improper venue, or in the alternative, transfer venue (doc. # 7) is DENIED.

It is so ordered.

Dated at Bridgeport, Connecticut, this 24th day of June 2005.


                                         /s/ Stefan R. Underhill

                                                 Stefan R. Underhill

                                                 United States District Judge